UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL JAY HARRIS,[1]

        Plaintiff,

    v.

MATTHEW ATCHLEY, et al.,

        Defendants.

Case No. 21-cv-06577-EMC

ORDER (1) OF DISMISSAL; (2) DENYING THIRD REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; AND (3) DENYING MOTION TO PROCEED *IN FORMA PAUPERIS*

Docket Nos. 9, 12

This is a *pro se* prisoner's civil rights action.  In his initially filed Complaint, Plaintiff Matthew Harris complained that an impending transfer to another prison would disrupt his continuing education.  *See generally*, Docket No. 1 ("Complaint").  Mr. Harris now has filed a First Amended Complaint ("FAC") which adds the allegation that Mr. Harris, "a convicted child rapist and molester 19 times over," FAC ¶ 43, is about to be transferred out of sensitive needs custody despite safety concerns, *see generally, id*.  Mr. Harris also has filed a third motion seeking a temporary restraining order ("TRO Motion").[2]  Docket No. 12.

    The Court carefully has reviewed the FAC.  For the reasons stated below, the Court concludes that Mr. Harris's claims must be dismissed without leave to amend, and his third TRO Motion denied.

---

[1] The Court's docket indicates that Plaintiff's name is Matthew Jay Harris.  *See generally*, Docket. Plaintiff's documents indicate that his name is Michael Jay Harris.  *See, e.g*., FAC at 1.  The Clerk shall update the Docket to reflect that Plaintiff's name is Michael Jay Harris.

[2] The Court denied Mr. Harris's first two TRO motions.  *See* Docket Nos. 5, 7.

United States District Court
Northern District of California

# I.   **BACKGROUND**

A.   Factual Background

Mr. Harris has been convicted of the rape and molestation of a child. FAC ¶¶ 31, 43. He has been in the custody of the California Department of Corrections and Rehabilitation ("CDCR") since May 3, 2010. *Id.* ¶ 12. At all relevant times, Mr. Harris has been incarcerated at Salinas Valley State Prison ("SVSP"). *Id.* ¶¶ 12, 13. Although Mr. Harris does not state as much in the FAC, the Court assumes that he currently is housed as a sensitive needs prisoner, a designation formerly known as protective custody prisoners.

At some point during 2021 Mr. Harris was informed that he likely would be transferred to another prison. *See generally, id.* Mr. Harris's claims concern this likely transfer, and the possibility that it will disrupt his education and will cause him to be placed in a non-sensitive needs situation.

### 1.   Allegations Related to Education

At various times during his incarceration at SVSP, Mr. Harris has taken courses from Hartline College and Coastline College. FAC ¶ 14. In June of 2021, Mr. Harris was enrolled in summer courses at Coastline College. *Id.* ¶ 27.

In a classification committee meeting on June 8, 2021, Mr. Harris was informed that he might be transferred to another prison. *Id.* ¶ 26. In the same meeting, Mr. Harris was informed that his new institution would "have educational opportunities which were equal to those at SVSP." *Id.* Mr. Harris also was informed that he would be able to complete his summer courses at Coastline College. *See id.*

On June 9, 2021, Mr. Harris was informed that he would be transferred to the Substance Abuse Treatment Facility in Corcoran, California ("SATF"). *Id.* ¶ 28. Mr. Harris consulted with his college coordinator, and was informed that the transfer would prevent Mr. Harris from completing his summer courses at Coastline College. *Id.* ¶ 27.

On July 29, 2021, Mr. Harris filed a grievance challenging the impending transfer, which he argued would disrupt his education. *Id.* ¶ 34; *see also* FAC Ex. at 29-30. This grievance was rejected by the SVSP Office of Grievances on September 9, 2021. *See* FAC Ex. at 58. On

United States District Court
Northern District of California

United States District Court
Northern District of California

1    October 8, 2021, Mr. Harris appealed the denial of this grievance to CDCR's Office of Appeals in

2    Sacramento.  FAC ¶ 57.

3             2.       Allegations Regarding Sensitive Needs Housing

4             Mr. Harris is housed on "A-yard" at SVSP.  FAC ¶¶ 13, 24, 36, 38, 48, 51.  Although Mr.

5    Harris does not state as much in the FAC, the Court assumes that A-yard houses sensitive needs

6    prisoners, formerly known as protective custody prisoners.

7                      a.       Initial Classification Meeting

8             Mr. Harris alleges that he is going to be transferred to SATF, which does not have

9    sensitive needs housing.  *See* FAC at 1.  This transfer was recommended in the afore-mentioned

10   June 8, 2021 classification meeting, and was approved on June 9, 2021.  *See id*. ¶¶ 26, 28.

11            On June 25, 2021, Mr. Harris filed a grievance regarding the classification meeting.  *Id*.

12   ¶ 30.  In his grievance, Mr. Harris requested a second classification meeting.  *See id*.  Mr. Harris

13   was given a second classification meeting on July 20, 2021.  *Id*. ¶¶ 32-34.  Mr. Harris's grievance

14   was denied on August 3, 2021, he had already been given a second classification meeting.  *See id*.

15   ¶ 37; *see also* FAC Ex. at 33 (denying grievance 134657).

16                     b.       Second Classification Meeting

17            In preparation for the second classification meeting held on July 20, 2021, Mr. Harris

18   alleges that he reached a verbal agreement with his correctional counselor that she would

19   "recommend" Mr. Harris be transferred "to the SNY level 2 Correctional Training Facility (CTF)

20   next door to SVSP," or in the alternative that Mr. Harris "remain on A-yard at SVSP."  *Id*. ¶ 32.

21   Because Mr. Harris expected his correctional counselor to make this recommendation, he chose

22   not to attend the second classification meeting held on July 20, 2021.  *See id*.  The July 20, 2021

23   classification meeting went forward in Mr. Harris's absence.  *See id*. ¶¶ 32-33.  At the meeting,

24   "the UCC members" recommended that Mr. Harris be transferred to CTF, or in the alternative

25   retained at SVSP.  *See id*. ¶ 33.  This recommendation matched Mr. Harris's agreement with his

26   correctional counselor.  *See id.*  Between July 20, 2021 and July 29, 2021, Mr. Harris received a

27   "chrono" of the committee's meeting and recommendation.  *See id*. ¶ 34.

28            On July 29, 2021, Mr. Harris submitted a grievance alleging that the chrono contained

United States District Court
Northern District of California

1  some errors, and asked for those errors to be fixed. *See id.* ¶ 34; *see also* FAC Ex. at 28

2  (grievance number 147251). This grievance was denied on September 9, 2021. FAC ¶ 50; *see*

3  *also* FAC Ex. at 61 (denying grievance number 147251). On October 9, 2021, Mr. Harris

4  appealed this rejection to CDCR's Office of Appeals in Sacramento. *See* FAC. at ¶ 58; *see also*

5  FAC Ex. at 99 (stating that he is appealing grievance 147251).

6          c.   <u>Endorsement for SATF Transfer</u>

7       On August 12, 2021, Mr. Harris was informed that the committee's recommendation had

8  been overridden by Defendant Vang, who had decided Mr. Harris would be transferred to SATF.

9  *See id.* ¶¶ 40 (stating that plaintiff was "told . . . on that date that he had been formally endorsed to

10  SATF"), 41 (stating that "Defendant Vang" made this decision "despite" the classification

11  committee's recommendation).

12       On August 12, 2021, Mr. Harris submitted a grievance challenging Defendant Vang's

13  decision to transfer him to SATF. *Id.* ¶ 41; *see also* FAC Ex. at 39-40 (unnumbered grievance

14  signed August 12, 2021), 41 (grievance number 152279 was received by the Institutional Office of

15  Grievances on August 16, 2021). This grievance was rejected as duplicative on September 9,

16  2021. FAC ¶ 49; FAC Ex. at 58 (rejecting grievance 152279 as duplicative of grievance 147251).

17  On October 9, 2021, Mr. Harris appealed this rejection to CDCR's Office of Appeals in

18  Sacramento. *See* FAC. at ¶ 57; *see also* FAC Ex. at 97 (appealing grievance 152279).

19          d.   <u>General Challenge to Non-Designated Programming Facilities</u>

20       Mr. Harris represents that in 2019 he filed a grievance challenging the constitutionality of

21  CDCR's statewide plan to create Non-Designated Programming Facilities. *See* FAC ¶ 13. Mr.

22  Harris concedes that he later withdrew that grievance. *See id.*

23       Following his endorsement for a transfer to a Non-Designated Programming Facility at

24  SATF, Mr. Harris again filed a grievance which challenged CDCR's statewide plan. *See id.* ¶ 45;

25  *see also* FAC Ex. 93-94 (grievance 162142). This grievance was denied on September 29, 2021.

26  *See* FAC ¶ 56; *see also* FAC Ex. at 91 (denying grievance 162142). On October 4, 2021, Mr.

27  Harris appealed this rejection to CDCR's Office of Appeals in Sacramento. *See* FAC ¶ 56; *see*

28  *also* FAC Ex. at 95 (appealing the denial of grievance 164142).

United States District Court
Northern District of California

B.      Legal Background

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. 1997e(a).  Compliance with the exhaustion requirement is "mandatory," *Porter v. Nussle*, 534 U.S. 516, 524 (2002), and is "no longer left to the discretion of the district court," *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  Courts may not create their own "special circumstances" exceptions to the exhaustion requirement.  *Ross v. Blake*, 578 U.S. 632, 639 (2016) (reversing Fourth Circuit's ruling that failure to exhaust was justified where prisoner reasonably—even though mistakenly—believed he had exhausted remedies).  Even "[w]hen a prison inmate seeks injunctive relief, a court need not ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

An action must be dismissed unless the prisoner exhausted his available administrative remedies *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending.  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

The PLRA's exhaustion requirement cannot be satisfied by filing a "procedurally defective administrative grievance or appeal."  *Woodford*, 548 U.S. at 84.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."  *Id.* at 90-91 (footnote omitted).  Here, the PLRA exhaustion requirement requires plaintiff to follow the grievance procedures adopted by CDCR.  *See id.*

1.      CDCR's Exhaustion Requirements

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to administratively grieve and appeal any "policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm

5

United States District Court
Northern District of California

to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a).

Under the regulations effective June 1, 2020, there are two levels of review for non-healthcare appeals by inmates, referred to as a grievance and an appeal. At the first level, the inmate submits a form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility where he is housed. *See id.* at § 3482(a), (c). "In response, a claimant shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim." *Id.* at § 3481(a). The prison's Institutional Office of Grievances is given "60 calendar days" to complete a written response to the claimant's grievance. *Id.* at § 3483(i).

If an inmate is dissatisfied with the Institutional Office of Grievances' decision at first level, the inmate must submit a second level appeal. To do so, the inmate submits a form CDCR 602-2 to the CDCR's Office of Appeals in Sacramento. *Id.* at §§ 3481(a), 3485(a). The Office of Appeals is given "60 calendar days after receipt of the appeal" to respond. *Id.* at § 3486(i).

## II.   ANALYSIS

Mr. Harris claims that his Fourteenth Amendment rights were violated by the Defendants' actions depriving him of educational opportunities; that his Eighth Amendment rights were violated by the Defendants' actions putting his safety at risk; and that his right of access to the courts was violated by Defendants' failure to expedite his grievances.[3]  *See* FAC ¶¶ 68-108.  A

---

[3] Mr. Harris alleged in the FAC that a correctional officer improperly disclosed Mr. Harris's positive COVID-19 test results to other inmates, and that Mr. Harris was medically isolated under unpleasant conditions. *See* FAC ¶¶ 17-23. However, Mr. Harris did not base any claim upon these allegations, *see id.* ¶¶ 68-108, does not name the alleged wrongdoer as a defendant, *see generally, id.*, and any claim based upon these allegations appears to be unexhausted in any case, *see id.* ¶ 23. The Court therefore assumes that Mr. Harris did not intend to base an Eighth Amendment claim on the COVID-related events, and that these allegations were included because of Mr. Harris's tendency to file prolix pleadings that contain irrelevant information. *See generally, id.* (discussing, at length, Mr. Harris's personal correspondence). To the extent Mr. Harris did intend to bring a claim based on the COVID-related events, the Court notes that the instant lawsuit would not have been the proper vehicle because such a claim is entirely unrelated to the gravamen of this action: Mr. Harris's transfer to SATF. *See* Fed. R. Civ. P. 20(a)(2) (Federal pleading rules require that claims be based on "the same transaction, occurrence, or series of transactions or occurrences" and pose a "question of law or fact common to all defendants."). Should Mr. Harris wish to pursue a claim based on the COVID-related events, he must do so in a separate suit. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims against different defendants belong in different suits, and prisoners must pay the required filing fees under the PRLA).

1  review of the record reveals that this action must be dismissed because Mr. Harris did not exhaust

2  his first two claims before filing suit, and because his third claim is meritless.

3  A.   Legal Standard

4       A federal court must engage in a preliminary screening of any case in which a prisoner

5  seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28

6  U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any

7  claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or

8  seek monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b).

9       *Pro se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901

10  F.2d 696, 699 (9th Cir. 1990).  In screening a *pro se* complaint, a district court may consider

11  information which properly is subject to judicial notice.  *Cato v. United States*, 70 F.3d 1103, 1105

12  (9th Cir. 1995) (affirming a district court's dismissal of a complaint as duplicative at screening,

13  where district court considered previous actions filed by the plaintiff); *Williams v. Paramo*, 830 F.

14  App'x 981, 982 (9th Cir. 2020) (same, and noting that "the district court permissibly took judicial

15  notice of multiple actions" filed by the plaintiff) (citing *Cato*, 70 F.3d at 1105).  A "court need not

16  . . . accept as true allegations that contradict matters properly subject to judicial notice or by

17  exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on*

18  *other grounds on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001).[4]

19  B.   The Education-Related Claim is Unexhausted

20       Mr. Harris argues that Defendants' decision to transfer him to SATF will prevent Mr.

21  Harris from pursuing his education, and violates his right to "educational equal protection" under

22  the Fourteenth Amendment to the United States Constitution.  FAC ¶¶ 68-72, 86-96.  The FAC

23  reveals that this claim was not exhausted.

24       Although the failure to exhaust administrative remedies is an affirmative defense that

25  normally must be raised by a defense motion for summary judgment, it may be the basis for

26

27  _____

[4] *See also Spencer v. Kokol*, 744 F. App'x 515 (9th Cir. 2018) (finding that district court properly dismissed prisoner's complaint at screening) (citing *Sprewell*, 266 F.3d at 988); *Raiser v. City of L.A.*, 698 F. App'x 412, 413 (9th Cir. 2017) (same); *Morales v. Cribbs*, 633 F. App'x 434 (9th Cir. 2016) (same); *King v. Capps*, 384 F. App'x 601, 602 (9th Cir. 2010) (same).

28

United States District Court
Northern District of California

dismissal when the failure to exhaust is plain from the plaintiff's pleading.  *See Jones v. Bock*, 549 U.S. 199, 214-15 (2007) (explaining that a district court may sua sponte dismiss a complaint at screening where, taking the prisoner's allegations as true, it is clear from the face of the complaint that the prisoner failed to exhaust).[5]  In reviewing the adequacy of the pleading, the court is limited to the contents of the pleading, including documents physically attached to the amended complaint or documents the amended complaint necessarily relies on and whose authenticity is not contested.  *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Here, the face of the FAC and exhibits thereto show that Mr. Harris did not exhaust administrative remedies for the education-related claim he wants to pursue here.  Although Mr. Harris makes a conclusory statement that he exhausted administrative remedies, *see* FAC ¶ 59, his factual allegations and the documents attached to his FAC plainly show that he raised the education-related claim to this Court before administrative review had concluded.  Specifically, Mr. Harris concedes that he did not appeal the denial of his grievance until October 8, 2021.  FAC ¶ 57.  However, Mr. Harris filed the initial Complaint, challenging the loss of educational opportunities, on August 25, 2021.  *See* Compl. at 22 (dating the Complaint).  Mr. Harris thus did not even attempt to exhaust his education-related claim until more than one month *after* he filed a complaint raising this claim.  This is impermissible; the law is clear that "a prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court."  *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010).  Because Mr. Harris did not exhaust this claim before filing suit, the Court is required to dismiss this claim.  *See Ross*, 578 U.S. at 639.

---

[5] *See also Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (noting that an action may be dismissed on the pleadings for failure to exhaust "[i]n the rare event that a failure to exhaust is clear on the face of the complaint"); *Gaines v. Henry*, 837 F. App'x 598 (9th Cir. 2021) (affirming district court's dismissal of complaint at screening stage, where failure to exhaust was clear from the face of the complaint); *Eckard v. Deshev*, 808 F. App'x 560, 561 (9th Cir. 2020) (same); *Galvan v. Lucas*, 781 F. App'x 633, 634 (9th Cir. 2019) (same); *O'Neal v. Solis*, 586 F. App'x 440 (9th Cir. 2014) (same); *cf. Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) (noting that a district court may dismiss a complaint at screening "if there exists an 'obvious bar to securing relief on the face of the complaint,'" even if that bar is an affirmative defense).

1    This is not a case where the plaintiff's failure to exhaust is excused. Mr. Harris is clearly

2    aware that he needs to exhaust, and states on the face of the FAC that he is in the process of doing

3    so. FAC ¶¶ 56, 58 (stating that he sent appeals to the Office of Appeals in Sacramento in order to

4    exhaust administrative remedies). Mr. Harris simply filed the Complaint and the FAC too soon.

5    Mr. Harris must wait until the Office of Appeals responds to his grievances and, if the Office of

6    Appeals rejects those grievances, file a new action in this Court. *See O'Neal v. Solis*, 586 F.

7    App'x 440 (9th Cir. 2014) (noting that a dismissal for failure to exhaust is without prejudice).

8    The Court will not permit Mr. Harris merely to amend his pleading at this time, because

9    amendment would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

10   1041 (9th Cir. 2011) ("[A] district court may dismiss without leave [to amend] where . . .

11   amendment would be futile.").[6] Because Mr. Harris filed his claims before fully exhausting his

12   administrative remedies, an amended complaint would not cure the failure to exhaust. *See*

13   *McKinney*, 311 F.3d at 1199 (an action is subject to dismissal if the plaintiff exhausts while the

14   action is pending, rather than before filing suit); *Vaden*, 449 F.3d at 1051 (same). As noted above,

15   "'a suit filed by a prisoner before administrative remedies have been exhausted *must* be dismissed;

16   the district court lacks discretion to resolve the claim on the merits, *even if* the prisoner exhausts

17   intra-prison remedies before judgment.'" *McKinney*, 311 F.3d at 1200 (emphases added) (quoting

18   *Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 535 (7th Cir.1999)). For Mr. Harris's benefit, the

19   Court explains that this means Mr. Harris must file an entirely new action to pursue the currently

20   unexhausted claim, rather than filing an amended complaint in the instant action. The Court

21   recognizes that this step may "occasion the expenditure of additional resources on the part of the

22   parties." *Id*. Nevertheless, the Ninth Circuit has expressly held that courts are required to dismiss

23   in this situation, even though the litigants may be inconvenienced. *See id*. (stating that Congress

24

25   _____

26   [6] *See also Bobadilla v. Lizarraga*, 834 F. App'x 376, 377 (9th Cir. 2021) (affirming dismissal of prisoner's complaint at screening without leave to amend because amendment would have been futile); *Williams*, 840 F. App'x at 213 ("We conclude amendment would have been futile because

27   it would not cure Williams' failure to exhaust available administrative remedies."); *Mahone v. Morgan*, 135 F. App'x 930, 931 (9th Cir. 2005) ("The district court did not abuse its discretion in

28   denying Mahone leave to amend his complaint because the claim he sought to include had not been administratively exhausted, so amendment would have been futile.").

United States District Court
Northern District of California

1    has "made a policy judgment that" the parties' inconvenience is "outweighed by the advantages of

2    requiring exhaustion prior to the filing of suit").

3         Accordingly, Mr. Harris's first claim is **DISMISSED** without leave to amend.  This

4    dismissal is without prejudice to filing a new action once the claim has been properly exhausted.

5    C.    The Sensitive-Needs-Housing Claim is Unexhausted

6         Mr. Harris argues that his right to safety under the Eighth Amendment is violated by

7    Defendants' decision to transfer him to SATF and by CDCR's decision to create Non-Designated

8    Programming Facilities at all.  *See* FAC ¶¶ 60-67, 76-85.

9         This claim is unexhausted.  Mr. Harris concedes on the face of the FAC that he did not

10   appeal the denial of his housing-related grievances until October 4, 2021 and October 9, 2021.

11   *See* FAC ¶¶ 56-58.  For the reasons discussed above, CDCR's response to these grievances was

12   not due until December 3, 2021 and December 8, 2021, respectively.  *See* Cal. Code Regs. tit. 15,

13   § 3486(i).  However, Mr. Harris filed the FAC, challenging his transfer to SATF on safety

14   grounds, on October 11, 2021.  *See* FAC ¶ 37.  In other words, the FAC that raised Mr. Harris's

15   housing claim was filed nearly two months before CDCR was required to respond to Mr. Harris's

16   appeals.  This is impermissible.  Courts have repeatedly held that, where the government still has

17   time to respond to a grievance, an as-yet-unanswered grievance is unexhausted.  *See, e.g., Jackson*

18   *v. D.C.*, 254 F.3d 262, 269 (D.C. Cir. 2001) (holding that prisoner who never received a response

19   to his first-level grievance nevertheless failed to satisfy exhaustion requirement because time

20   period for prison response had not expired before he filed suit); *Barroca v. Benov*, No. C 01-0004

21   VRW, 2002 WL 1998273, at *3 n.1 (N.D. Cal. Aug. 22, 2002) (dismissing action that was filed

22   "too early," where the time for defendants to respond had not run); *cf. McKinney*, 311 F.3d at 1199

23   (citing *Jackson*, 254 F.3d at 269 with approval).

24        Because Mr. Harris did not exhaust this claim before raising it in the FAC, the Court must

25   dismiss this claim.  *See id.* (stating that dismissal is required and is non-discretionary where a

26   party failed to exhaust before filing suit); *see also Vaden*, 449 F.3d at 1051.  For the reasons

27   explained above, the Court concludes that amendment would be futile.

28        Accordingly, Mr. Harris's second claim is **DISMISSED** without leave to amend.  This

1    dismissal is without prejudice to filing a new action once the claim has been properly exhausted.

2    D.    The Access to the Courts Claim Fails on the Merits

3         Mr. Harris argues that Defendants violated his right of access to the courts by rejecting

4    some of his grievances for reasons of administrative procedure. [7]  *See* FAC ¶¶ 73 (stating that

5    Defendants rejected grievances because they were "anticipatory" or "not allowed pursuant to the

6    grievance/appeal policy"), 74 (appeals were rejected as untimely).  Mr. Harris argues that this

7    shows an intent "to thwart and impede plaintiff's attempts to seek emergency expedited grievance

8    review." *Id.* ¶ 98.

9         To establish a claim for any violation of the right of access to the courts, the prisoner must

10   prove that there was, for instance, an inadequacy in the prison's legal access program that caused

11   him an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349-51 (1996).  To prove an actual injury,

12   the prisoner must show that he was hindered in his efforts to pursue a non-frivolous claim

13   concerning his conviction or conditions of confinement.  *See id.* at 351, 354-55.  The Supreme

14   Court has identified two categories of denial of access to courts claims.  *See Christopher v.*

15   *Harbury*, 536 U.S. 403, 412-17 (2002).  In the first category are claims that "systemic official

16   action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at

17   412.  This "forward-looking" category includes, for example, prisoner claims for access to the law

18   library for preparing a case, for a reader for an illiterate prisoner, or for a lawyer.  *See id.*

19   Forward-looking access-to-the-courts claims aim to "remove roadblocks to future litigation." *Id.*

20   at 415.  The second "backward-looking" category consists of claims "not in aid of a class of suits

21   yet to be litigated, but of specific cases that cannot now be tried . . . no matter what official action

22   may be in the future." *Id.*  at 413-14.  For backward-looking claims, "[t]he official acts claimed to

23   have denied access may allegedly have caused the loss or inadequate settlement of a meritorious

24   case. . . the loss of an opportunity to sue, . . . or the loss of an opportunity to seek some particular

25

26   _____

27   [7] The constitutional source of the right of access to the courts is not settled.  *See Christopher v.*
     *Harbury*, 536 U.S. 403, 413-14 & 415 n.12 (2002).  Supreme Court decisions have grounded the
     right in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the
28   Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due
     Process Clauses.  *See id.* at 415 n.12 (citing cases).

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

order of relief . . . . These cases . . . look . . . backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id*. at 414.[8]

The first reason that Mr. Harris's claim fails is that he fails to identify any actual injury. Mr. Harris has not identified any legal claim which he was "frustrat[ed] . . . in preparing and filing," or which he would have brought but which "cannot now be tried," as a result of Defendants' actions. *Christopher*, 536 U.S. at 412-14; *see also Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991) (upholding dismissal where prisoner unable to demonstrate that denial of photocopying caused the dismissal of an appeal). Indeed, Mr. Harris does not identify any claim he has been hindered from filing in Court because of Defendants' actions.

The second reason that Mr. Harris's claim fails is that although he challenges Defendants' failure to a grievance procedure customized to Mr. Harris's needs, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that administrators' actions in reviewing grievances cannot be the basis for a claim). Courts have rejected claims based on a prison's failure to follow a particular administrative procedure. *See id*.[9] Here, Mr. Harris alleges that Defendants should have afforded him special treatment and reviewed each of his grievances on an expedited basis, should

---

[8] *Christopher* itself is such a "backward-looking" case. *See Christopher*, 536 U.S. at 415 (describing the case at bar as "backward-looking"). In *Christopher*, the plaintiff's husband was captured by the Guatemalan army, tortured, and eventually killed. *See id*. at 406. Throughout the time the Guatemalan army held her husband, the plaintiff sought information on his whereabouts from the CIA. *See id*. The CIA knew the location of the plaintiff's husband, but told the plaintiff it had no information. *See id*. The plaintiff alleged that, had CIA officials not denied her this information, she could have used that information to obtain her husband's release, perhaps through a lawsuit seeking injunctive relief. *See id*. at 415. However, because the plaintiff's husband died before she obtained the information, she was denied the opportunity ever to seek injunctive relief. *See id*. at 411-12.

[9] *See also Peralta v. Dillard*, 744 F.3d 1076, 1087 (9th Cir. 2014) ("At most, Peralta has shown that Dillard failed to follow required [administrative review] procedures. But Dillard's failure to follow such procedures isn't, of itself, enough to establish a violation of Peralta's constitutional rights."); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *Young v. Voong*, 738 F. App'x 509, 510 (9th Cir. 2018) ("The district court properly dismissed Young's due process claim arising from the treatment of his prison appeals because Young 'lack[s] a separate constitutional entitlement to a specific prison grievance procedure.'") (citation omitted).

United States District Court
Northern District of California

1    have ignored the untimeliness of his grievances, and should have disregarded CDCR rules

2    prohibiting anticipatory grievances.  *See, e.g.*, FAC ¶¶ 98, 105 (alleging Defendants did not give

3    plaintiff the expedited review that he demanded); *see also id.* ¶ 99 (alleging Defendants should

4    have recognized "the importance of the First and Second Causes of Action in this complaint," and

5    given plaintiff special treatment because of it).  An inmate has no constitutional right even to have

6    prison officials *follow* grievance procedures, much less to comply with a demand to follow a

7    customized procedure.

8         Finally, Mr. Harris's own allegations and exhibits reveal that no obstruction occurred.

9    Instead, Defendants responded to each of his grievances, explained why each grievance was

10   denied, and told Mr. Harris how to pursue the grievance if he disagreed with the denial.  *See, e.g.*,

11   FAC Ex at 33 (explaining the reasons the grievance was denied, citing the controlling regulations,

12   and informing Mr. Harris of his next steps if he disagreed with the decision).  As explained above,

13   the grievances are still in the process of being exhausted, and Mr. Harris still may attempt to

14   pursue them in federal court after exhaustion is complete.  Simply put, the FAC reveals that Mr.

15   Harris's claims of obstruction are baseless.

16        Because Mr. Harris has not identified any actual injury, lacks any constitutional

17   entitlement to the expedited review he sought, and was not obstructed by Defendants' actions, his

18   third claim is **DISMISSED** with prejudice.

19   E.   Mr. Harris is not Entitled to a TRO

20        To obtain a TRO, a plaintiff "must establish that he is likely to succeed on the merits, that

21   he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

22   equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def.*

23   *Council*, 555 U.S. 7, 20 (2008) (stating the requirements to obtain a preliminary injunction); *see*

24   *also Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076 (N.D. Cal. 2016) (TROs and

25   preliminary injunctions require satisfaction of "[t]he same legal standard.") (citing *Stuhlbarg Int'l*

26   *Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Such remedies are

27   extraordinary, and not granted as of right.  555 U.S. 7 at 20.  Even where the balance tips sharply

28   in a plaintiff's favor, however, the plaintiff must still make the showing of likely success on the

1    merits or a serious legal question.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011)

2    ("[E]ven certainty of irreparable harm has never *entitled* one to a stay.") (emphasis in original).

3    The party seeking the injunction bears the burden of proving each of the four elements.  *Klein v.*

4    *City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

5         As explained above, all of Mr. Harris's claims fail.  Because plaintiff has failed to make "a

6    certain threshold showing . . . on each factor," including any likelihood of success on the merits,

7    *Leiva-Perez*, 640 F.3d at 966, his TRO Motion must be **DENIED**.

8    F.    Mr. Harris's is not Entitled to Proceed *In Forma Pauperis*

9         A court may permit a litigant to file an action "without prepayment of fees or security

10   therefor" if "the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a).

11   If, however, "the court determines that . . . the action . . . fails to state a claim on which relief may

12   be granted," "the court shall dismiss the case." *Id*. at § 1915(e)(2)(B).

13        Here, Mr. Harris sought leave to proceed *in forma pauperis*.  *See* Docket No. 9.  For the

14   reasons explained above, the Court has concluded that Mr. Harris failed to state a claim.  *See*

15   *supra*.  Accordingly, Mr. Harris's action is dismissed and his IFP Motion is **DENIED** as moot.

16                          **III.      CONCLUSION**

17        This action is dismissed for failure to state a claim upon which relief may be granted.

18   Because amendment would be futile, dismissal is without leave to amend.  However, dismissal is

19   without prejudice to plaintiff filing a new action raising his education- and housing-related claims,

20   once those claims are properly exhausted.  The Clerk shall close the file.

21        The Court certifies that any appeal of this order is not taken in good faith.  *See* 28 U.S.C.

22   § 1915(a)(3).

23        This order disposes of Docket Nos. 9 and 12.

24        **IT IS SO ORDERED**.

25

26   Dated: January 14, 2022

27                                          _____

28                                          EDWARD M. CHEN
                                            United States District Judge

United States District Court
Northern District of California